**LAW OFFICES OF TODD M. FRIEDMAN**
Todd M. Friedman (SBN 216752)
21031 Ventura Blvd., Suite 340
Woodland Hills, Ca 91364
Telephone: 323-306-4234
Email: tfriedman@toddflaw.com

**LEVI & KORSINSKY, LLP**
Mark S. Reich (*pro hac vice* to be filed)
Courtney E. Maccarone (*pro hac vice* to be filed)
Gary Ishimoto (*pro hac vice* to be filed)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk
Email: gishimoto@zlk.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| APRIL DAVIS and MAHMOOD DAWOOD, on behalf of themselves and a class of all others similarly situated, | Civil Action No. |
|---|---|
| Plaintiffs, | **CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL** |
| v. | |
| THE KROGER COMPANY, | |
| Defendant. | |

Plaintiffs April Davis and Mahmood Dawood (collectively "Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action lawsuit against Defendant The Kroger Company ("Kroger" or "Defendant") based upon personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

# **INTRODUCTION**

1.      This is a class action lawsuit against Defendant regarding the manufacture, distribution, and sale of its Kroger-branded "Non-Drowsy" over-the-counter cold and flu medicines that contain Dextromethorphan Hydrobromide ("the "Non-Drowsy Products").[1]

2.      The Non-Drowsy Products state prominently on the front of their labels that they are "Non-Drowsy" and "Daytime" products.



3.      By prominently labeling the products as "Non-Drowsy" and "Daytime," Defendant led Plaintiffs and other consumers to believe that the Non-Drowsy Products do not cause drowsiness, and that drowsiness is not a side effect of the products.

4.      Defendant also led Plaintiffs and other consumers to believe that the

---

[1] The Non-Drowsy Products include: Tussin CF, Daytime Cold and Flu Softgel, Daytime Cold Multi-Symptom, Daytime Cold and Flu Multi-Symptom Relief, Daytime Severe Cold and Flu, Daytime/Nighttime Severe Cold and Flu (combo pack), Daytime/Nighttime Severe Cold and Flu (combo pack), Tussin DM, Fast Cold and Flu Relief, and Tussin DM MAX. Plaintiffs reserve the right to amend this list if further investigation and/or discovery reveals that the list should be amended.

CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL

Non-Drowsy Products are for use during the "DayTime" and intended to be used during waking hours.

5.     However, one of the active ingredients in the Non-Drowsy Products is Dextromethorphan Hydrobromide ("DM HBr").  While the average consumer may not be aware, drowsiness is a documented side effect of DM HBr at the recommended dosages. Authorities such as the National Library of Medicine and Mayo Clinic list drowsiness as a side effect of this ingredient.[2]

6.     Plaintiffs and Class members purchased the Non-Drowsy Products with the expectation that the products would not cause drowsiness and that they were intended to be used during waking hours. Because Defendant sold products to consumers that cause drowsiness, Plaintiffs and the Classes were deprived of the benefit of their bargain.

7.     Accordingly, Plaintiffs bring this action on behalf of themselves and the Class for equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) violations of California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.* (iii) violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, (iv) violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, and (v) unjust enrichment.

## **PARTIES**

8.     Plaintiff April Davis is a resident and citizen of the state of California. Beginning in approximately 2018 and most recently in February 2022, Plaintiff Davis purchased several of the Non-Drowsy Products – *e.g.*, a DayTime and NightTime Cold & Flu Multi-Symptom Relief combo pack, from a Ralphs retail store located in

---

[2] Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed March 23, 2022); *Mayo Clinic, Drugs and Supplements Dextromethorphan (Oral Route)*, https://www.mayoclinic.org/drugs-supplements/dextromethorphan-oral-route/side-effects/drg-20068661?p=1 (last accessed March 23, 2022).

Studio City, California. When purchasing the Non-Drowsy Products, Plaintiff Davis reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the products would not cause drowsiness and could be used during the day.  Plaintiff Davis relied on these representations and warranties in deciding to purchase the Non-Drowsy Products and these representations and warranties were part of the basis of the bargain in that she would not have purchased the Non-Drowsy Products if she had known that they would cause drowsiness.  When Plaintiff Davis took the medication as directed by Defendant, she became unexpectedly drowsy.

9.     Plaintiff Mahmood Dawood is a resident and citizen of the state of California.  Between 2020 through part of 2021, Plaintiff Dawood purchased one or more of the Non-Drowsy Products – *e.g.*, DayTime Cold & Flu Multi-Symptom Relief Softgels and DayTime Cold Multi-Symptom Caplets, from Kroger and Ralphs retail stores located in Sacramento, California.   When purchasing the Affected Products, Plaintiff Dawood reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the products would not cause drowsiness and could be used during the day.  Plaintiff Dawood relied on these representations and warranties in deciding to purchase the Non-Drowsy Products and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Non-Drowsy Products if he had known that they would cause drowsiness.   When Plaintiff Dawood took the medication as directed by Defendant, he became unexpectedly drowsy.

10.    Kroger is an Ohio corporation with its principal place of business and headquarters located at 1014 Vine Street, Cincinnati, Ohio. Kroger was founded in 1883 in Cincinnati, Ohio by Bernard Kroger and is the largest grocery chain in America.  At all relevant times hereto, Defendant was engaged in manufacturing, marketing, distributing, and advertising Non-Drowsy Products throughout the United States. Defendant created and/or authorized the false and misleading advertising and

labeling of the Non-Drowsy Products.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

12.     This Court has personal jurisdiction over Defendant because Defendant sold the Non-Drowsy Products to consumers in California, including to Plaintiffs. Defendant derives substantial revenue from sales of its products in this State, with knowledge that its products are being marketed and sold for use in this State.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Plaintiff Davis' purchases of the Non-Drowsy Products.

## FACTUAL ALLEGATIONS

**A.    Defendant Manufactures, Distributes, Markets, and Sells the Non-Drowsy Products**

14.     Defendant manufactures, distributes, markets, and sells the Non-Drowsy Products.

15.     Each of the Non-Drowsy Products prominently state on its label that the product is "Non-Drowsy" and for "DayTime" use.

16.     For example, below is an image of the Kroger Maximum Strength DayTime Severe Cold & Flu product label.



17.     The Kroger Cold & Flu DayTime Multi-Symptom Relief product label includes the same representations.



18.     The Non-Drowsy Products are also sold in combo packs with NightTime

products. For example, below is an image of the Kroger DayTime Severe Cold & Flu combo pack which includes "DayTime" and "NightTime" formulations.



19.    The NightTime product includes the representation that the product is for "Nighttime Relief" whereas the DayTime product includes the "Non-Drowsy" representation.

20.    Both the DayTime and NightTime products contain DM HBr, the ingredients in the Non-Drowsy Products that causes drowsiness.

21.    The "Non-Drowsy" and "DayTime" representations are materially the same across the Non-Drowsy Products.

22.    Based on the prominent "Non-Drowsy" and "Daytime" representations included on the front of each product, a reasonable consumer would believe that the products do not cause drowsiness and that drowsiness is not a side effect of the product.

**B.**      **Defendant's False and Misleading Advertising Campaign**

23.    One of the active ingredients in the Non-Drowsy Products is DM HBr.

24.    Drowsiness is a well-documented side effect of DM HBr.

25.    For example, the Mayo Clinic and the National Library of Medicine list drowsiness as a side-effect of the ingredient.[3]

26.    Manufacturers and distributors know that DM HBr causes drowsiness as their safety data sheets ("SDS") explicitly state that DM HBr causes and may cause drowsiness.

27.    According to Pfizer's safety datasheet for their Robitussin cough medicine. "Common adverse reactions associated with the clinical use of dextromethorphan hydrobromide include, drowsiness, dizziness, and nausea and vomiting".[4]

28.    Santa Cruz Biotechnology Inc lists acute health effects on their SDS following the consumption of DM HBr such as "Drowsiness, dizziness, excitation, mental confusion and gastro-intestinal disturbances have been described following dextromethorphan. Administration."[5]

29.    In other words, sedation is a well-known adverse event of this ingredient.[6]

---

[3] *Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine*, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed March 23, 2022); *Mayo Clinic, Drugs and Supplements Dextromethorphan (Oral Route)*, https://www.mayoclinic.org/drugs-supplements/dextromethorphan-oral-route/side-effects/drg-20068661?p=1 (last accessed March 23, 2022).

10 Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed March 23, 2022).

[4] *Pfizer, Safety Data Sheet*, https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn/SDS_9PFIZ_ROBITUSSIN_DM_SYRP_ADLT_COUGH_CHEST_HONEY_4OZ.pdf (last accessed March 23, 2022).

[5] Dextromethorphan Hydrobromide, Material Safety Data Sheet, https://datasheets.scbt.com/sc-204716.pdf (last accessed March 23, 2022).

[6] *See* Martin, E., Narjoz, C., Decleves, X., Labat, L., Lambert, C., Loriot, M. A., ... & Pickering, G. (2019). Dextromethorphan analgesia in a human experimental model of hyperalgesia. *Anesthesiology*, *131*(2), 356-368; *see also* Siu, A. and Drachman, R. (2007), Dextromethorphan: A Review of N-methyl-d-aspartate Receptor Antagonist in the Management of Pain. CNS Drug Reviews, 13: 96-106. https://doi.org/10.1111/j.1527-3458.2007.00006.x ("DM is used clinically in the form of salt, dextromethorphan hydrobromide…The majority of DM's adverse effects occur at the level of the CNS. Neurologic toxicity associated with DM includes dystonia, fatigue, drowsiness, and dizziness".).

CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL

30.    In fact, the Federal Aviation Administration prohibits pilots from flying after taking medicines that contain dextromethorphan. The document titled, "What Over-the-Counter (OTC) medications can I take and still be safe to fly" lists DayQuil as a "No Go" product because it contains dextromethorphan.[7]  The Non-Drowsy Products and DayQuil both contain this ingredient.  Specifically, the Non-Drowsy Products are compared to DayQuil on the front panel of the product labels.



31.    The Non-Drowsy Products do not disclose anywhere on the packaging that they do or can cause drowsiness, or that drowsiness is a side effect.

32.    As such, Defendant's advertising campaign is false and misleading.

33.    The Food and Drug Administration ("FDA") prohibits labeling drugs with "false or misleading" statements. 21 C.F.R. § 201.6. It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

34.    While the Federal Regulations relating to the labelling of antitussive drug products do not require products with DM HBr to include an affirmative

---

[7] *Federal Aviation Administration, What Over-the-Counter (OTC) medications can I take and still be safe to fly* https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf (last accessed March 23, 2022).

CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL

"drowsiness" warning, *see generally*, 21 C.F.R. § 341.74, Defendant could have simply omitted the false and misleading "Non-Drowsy" representations from its product labels.

35.    Other drug makers do not falsely claim that products that include DM HBr are "non-drowsy."  For example, Coricidin is a cold symptom relief product for people with high blood pressure.  Coricidin is manufactured, sold, and advertised by Bayer. This product contains DM HBr and omits false representations by not labeling the product as "Non-Drowsy."



36.    Or, if Defendant wanted to differentiate its DayTime products from its NightTime products, it could have indicated on the product label that the DayTime products would cause *less* drowsiness than the NightTime products.  For example, the below Dramamine product is advertised as a "less drowsy" formula.



37.    Defendant intended that consumers would rely on the "Non-Drowsy" and "Daytime" labeling so that consumers would purchase more products, pay a price premium, and buy them as alternatives to its NightTime products. The product labels do not warn consumers that the products cause drowsiness, may cause drowsiness, or you may get drowsy from the usage of such products thereby creating an unreasonable risk of harm.

**C.    Consumers Have Been Harmed By Defendant's False Representations**

38.    Defendant knew, or should have known, that Defendant's "Non-Drowsy Products" are misbranded because they contain DM HBr which causes drowsiness in consumers.

39.    Defendant knew, or should have known, that products misrepresented material facts concerning the "Non-Drowsy" and "DayTime" representations when in fact the products contained an ingredient that causes drowsiness.

40.    Defendant knew, or should have known the representations and statements through it's labeling prescribes dangerous uses.

41.    Plaintiffs would not have purchased the Non-Drowsy Products, or would have paid less for them, had the Non-Drowsy Products been truthfully and accurately

1   labeled.

2   ## CLASS ACTION ALLEGATIONS

3   42.   Plaintiffs bring this action pursuant to Rule 23(a), (b)(2), and (b)(3) of
4   the Federal Rules of Civil Procedure, individually and on behalf of the following
5   Classes:

> All persons who purchased one or more of Defendant's Non-
> Drowsy Products in the United States for personal/household
> use within any applicable limitations period (the "Nationwide
> Class").

8   43.   Plaintiffs bring this action individually and on behalf of the following
9   California subclass:

> All persons who purchased one or more of Defendant's Non-
> Drowsy Products in the state of California for
> personal/household use within any applicable limitations (the
> "California Subclass").

13   44.   Excluded from the Class and Subclass are: (1) any Judge or Magistrate
14   presiding over this action and any members of their families; (2) Defendant,
15   Defendant's subsidiaries, parents, successors, predecessors, and any entities in which
16   Defendant or its parents and any entities in which Defendant has a controlling interest
17   and its current or former employees, officers, and directors; and (3) individuals who
18   allege personal bodily injury resulting from the use of Affected Products.

19   45.   Numerosity (Rule 23(a)(1)): The exact number of members of the Class
20   is unknown and currently unavailable to Plaintiffs, but joinder of individual members
21   herein is impractical. The Class is likely comprised of thousands of consumers. The
22   precise number of Class members, and their addresses, is unknown to Plaintiffs at this
23   time, but can be ascertained from Defendant's records and/or retailer records. The
24   members of the Class may be notified of the pendency of this action by mail or email,
25   Internet postings and/or publications, and supplemented (if deemed necessary or
26   appropriate by the Court) by published notice.

27   46.   Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's
28   claims present common questions of law and fact, and those questions predominate

- 12 -

over any questions that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

      a.  Whether the Non-Drowsy Products cause drowsiness;

      b.  Whether Defendant's labelling of the Non-Drowsy Products as "Non-Drowsy" and "Daytime" is false, misleading, and/or deceptive;

      c.  Whether Defendant violated the state consumer protection statutes alleged herein;

      d.  Whether Defendant breached its express warranties;

      e.  Whether Defendant was unjustly enriched; and

      f.  The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

47.   Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class Members, purchased the Non-Drowsy Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

48.   Adequacy of Representation (Rule 23(a)(4)): Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

49.   Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer

1  management difficulties and comprehensive supervision by a single court.

2      50.    Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative,

3  this action may properly be maintained as a class action because the prosecution of

4  separate actions by individual members of the Class would create a risk of

5  inconsistent or varying adjudication with respect to individual Class members, which

6  would establish incompatible standards of conduct for the Defendant; or the

7  prosecution of separate actions by individual Class members would create a risk of

8  adjudications with respect to individual members of the Class which would, as a

9  practical matter, be dispositive of the interests of other members of the Class not

10  parties to the adjudications, or substantially impair or impede their ability to protect

11  their interests; or Defendant has acted or refused to act on grounds generally

12  applicable to the Class, thereby making appropriate final injunctive or corresponding

13  declaratory relief with respect to the Class as a whole.

14  **CAUSES OF ACTION**

15  **COUNT I**

16  **BREACH OF EXPRESS WARRANTY**
17  **(On behalf of Plaintiffs and the Class (or alternatively, the California Subclass) against Defendant)**

18      51.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and

19  restate them as if fully set forth herein.

20      52.    Defendant marketed and sold its Non-Drowsy Products in the stream of

21  commerce with the intent that its Non-Drowsy Products would be purchased by

22  Plaintiffs and the Classes.

23      53.    In connection with the sale of the Non-Drowsy Products, Defendant, as

24  the designer, manufacturer, marketer, distributor, and/or seller issued written

25  warranties by representing that the Non-Drowsy Products were "Non-Drowsy" and

26  were "Daytime" products. These were affirmations of fact about the products (i.e., a

27  description of the effects) and a promise relating to the goods.

28      54.    In fact, the Non-Drowsy Products do not conform to the above

1  referenced representations because, as alleged in detail above, they cause drowsiness.

2  Thus, the warranty was breached.

3        55.    As a direct and proximate cause of Defendant's breach of express

4  warranty, Plaintiffs and the Class members have been injured and harmed because

5  they would not have purchased the products had they known that the Non-Drowsy

6  Products cause drowsiness; or (2) they overpaid for the Non-Drowsy Products

7  because they are sold at a premium due to the warranties.

8        56.    On March 18, 2022, prior to filing this action, Defendant was served

9  with a pre-suit notice letter pursuant to U.C.C. § 2-607.

10                                  **COUNT II**

11   **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**
     **Business & Professional Code §§ 17500,** *et seq.*

12        **(on behalf of Plaintiffs and the California Subclass)**

13        57.    Plaintiffs incorporate by reference and re-allege each and every

14  allegation set forth above as though fully set forth herein.

15        58.    Plaintiffs bring this cause of action on behalf of themselves and

16  members of the California Subclass.

17        59.    California's FAL, (Bus. & Prof. Code §§ 17500, *et seq.*) makes it

18  "unlawful for any person to make or disseminate or cause to be made or disseminated

19  before the public in this state,…in any advertising device…or in any other manner or

20  means whatever, including over the Internet, any statement, concerning…personal

21  property or services, professional or otherwise, or performance or disposition thereof,

22  which is untrue or misleading and which is known, or which by the exercise of

23  reasonable care should be known, to be untrue or misleading."

24        60.    Defendant committed acts of false advertising, as defined by § 17500, by

25  using false and misleading statements to promote the sale of the Non-Drowsy

26  Products, as described above, including but not limited to, representing that the Non-

27  Drowsy Products were non-drowsy and were intended to be used during waking

28  hours.

61. Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers.

62. Defendant knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

63. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decisions.

64. In addition, reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Products.

65. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs.

66. As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiffs and members of the California Subclass have suffered injury and actual out-of pocket losses because: (a) Plaintiffs and members of the California Subclass would not have purchased the Non-Drowsy Product if they had known the true facts regarding the products; (b) Plaintiffs and members of the California Subclass paid a price premium due to the misrepresentations about the product; and (c) the Non-Drowsy did not have the promised quality, effectiveness, or value.

67. Plaintiffs bring this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein. Plaintiffs and members of the California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs.

1

## COUNT III

2

**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA") Civil Code §§ 1750, *et seq.***
**(on behalf of Plaintiffs and the California Subclass)**

3

4     68.    Plaintiffs incorporate by reference and re-allege each and every

5  allegation set forth above as though fully set forth herein.

6     69.    Plaintiffs bring this cause of action on behalf of themselves and

7  members of the California Subclass.

8     70.    Plaintiffs and the other members of the California Subclass are

9  "consumers," as the term is defined by California Civil Code § 1761(d).

10     71.    Plaintiffs, the other members of the California Subclass, and Defendant

11  have engaged in "transactions," as that term is defined by California Civil Code §

12  1761(e).

13     72.    The conduct alleged in this Complaint constitutes unfair methods of

14  competition and unfair and deceptive acts and practices for the purpose of the CLRA,

15  and the conduct was undertaken by Defendant in transactions intended to result in,

16  and which did result in, the sale of goods to consumers.

17     73.    As alleged more fully above, Defendant violated the CLRA by falsely

18  representing to Plaintiffs and the other members of the California Subclass that the

19  Non-Drowsy Products do not cause drowsiness, and are intended to be used during

20  waking hours, when in fact, the products do cause drowsiness.

21     74.    As a result of engaging in such conduct, Defendant has violated

22  California Civil Code §1770(a)(5), (a)(7), and (a)(9).

23     75.    Defendant's representations were likely to deceive, and did deceive,

24  Plaintiffs and reasonable consumers. Defendant knew, or should have known through

25  the exercise of reasonable care, that these statements were inaccurate and misleading.

26     76.    Defendant's misrepresentations were intended to induce reliance, and

27  Plaintiffs saw, read and reasonably relied on them when purchasing Non-Drowsy

28  Products. Defendant's misrepresentations were a substantial factor in Plaintiffs'

purchase decision.

77. In addition, reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Products.

78. Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs.

79. Plaintiffs and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Non-Drowsy Products if they had known that they cause drowsiness, and/or (b) they overpaid for the products because they are sold at a price premium due to the misrepresentation.

80. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiffs, on behalf of themselves and all other members of the California Subclass, seeks injunctive relief.

81. On March 18, 2022, prior to filing this action, Defendant was served with a pre-suit notice letter pursuant to CLRA § 1782. The letter was sent certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA and demands that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendant does not fully correct the problem for Plaintiffs and for each member of the California Subclass within 30 days after service of Plaintiffs' notice letter, Plaintiffs and the California subclass will amend their complaint to seek all monetary relief allowed under the CLRA.

## COUNT IV

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
**Business & Professional Code §§ 17200,** *et seq.*
**(on behalf of Plaintiffs and the California Subclass)**

57. Plaintiff incorporates by reference and re-alleges each and every factual allegation set forth above as though fully set forth herein.

58. Defendant is subject to the UCL, Bus. & Prof. Code § 17200 et seq. The

UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides for injunctive relief and restitution for violations.

59.   "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *CelTech Communications, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

60.   Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc*., 202 Cal. App. 4th 1342, 1383 (2012).

61.   Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA, and FAL, as well as by breaching express warranties as described herein.

62.   Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by using false and misleading statements to promote the sale of the Non-Drowsy Product, as described above.

63.   Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiffs and members of the California Subclass arising from Defendant's conduct outweighs the utility, if any, of those practices.

64.   Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Non-Drowsy Products will not cause drowsiness. Defendant's practice of injecting misinformation into the marketplace

about the effects of its products is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about its medicines. Taking advantage of that trust, Defendant misrepresents the effects of its Non-Drowsy Products to increase its sales.

65. Defendant's conduct described herein, violated the "fraudulent" prong of the UCL by representing that the Non-Drowsy Products do not cause drowsiness, when in fact, they do.

66. Plaintiffs and members of the California Subclass are not sophisticated experts with independent knowledge of the side effects of ingredients in the Non-Drowsy Products, and they acted reasonably when they purchased the products based on their belief that Defendant's representations were true.

67. Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Non-Drowsy Products were untrue and misleading.

68. As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiffs and members of the California Subclass have suffered injury and actual out of pocket losses as a result of Defendant's unfair, unlawful, and fraudulent business acts and practices because: (a) Plaintiff and members of the California Subclass would not have purchased the Non-Drowsy Products on the same terms if they had known the true facts regarding the effects of the products; (b) Plaintiff and members of the California Subclass paid a price premium due to the misrepresentations of Defendant's Non-Drowsy Products; and (c) Defendant's Non-Drowsy Product did not have the quality and effectiveness or value as promised.

69. Pursuant to California Business & Professions Code §17203, Plaintiffs and members of the California Subclass are therefore entitled to: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's

attorneys' fees and costs.

## COUNT V

### UNJUST ENRICHMENT
### On behalf of the Plaintiffs and the Class against Defendant)

57.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

58.    Plaintiffs and Class members conferred benefits upon Defendant. Plaintiffs and Class members paid money for Defendant's Non-Drowsy Products that they would not have purchased or would not have purchased on the same terms, had they known that the products cause drowsiness.

59.    Defendant has unjustly retained the benefits conferred upon by Plaintiffs and Class members.

60.    Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Non-Drowsy Products cause drowsiness. If Plaintiffs and Class members had known the true nature of Defendant's Non-Drowsy Products, they would not have purchased the products. Plaintiffs and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

61.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

a.    Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as Class Counsel;

b.      Awarding Plaintiffs and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

c.      Awarding Plaintiffs and the Classes appropriate relief, including but not limited to actual damages;

d.      For declaratory and equitable relief, including restitution and disgorgement;

e.      For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

f.      Awarding Plaintiffs and the Classes the costs of prosecuting this action, including

expert witness fees;

g.      Awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

h.      Awarding pre-judgment and post-judgment interest;

i.      For punitive damages; and

j.      Granting any other relief as this Court may deem just and proper.

1

## **JURY TRIAL DEMANDED**

2

Plaintiffs hereby demand a trial by jury of all claims so triable.

3

4   Dated: March 29, 2022            Respectfully submitted,

5

/s/ Todd M. Friedman
6                                **LAW OFFICES OF TODD M. FRIEDMAN**
7                                Todd M. Friedman (SBN 216752)
21031 Ventura Blvd., Suite 340
8                                Woodland Hills, Ca 91364
Telephone: 323-306-4234
9                                Email:tfriedman@toddflaw.com

10

11                               **LEVI & KORSINSKY, LLP**
Mark S. Reich (*pro hac vice* to be filed)
12                               Courtney E. Maccarone (*pro hac vice* to be filed)
Gary Ishimoto (*pro hac vice* to be filed)
13                               55 Broadway, 10th Floor
14                               New York, NY 10006
Telephone: 212-363-7500
15                               Facsimile: 212-363-7171
Email: mreich@zlk.com
16                               Email: cmaccarone@zlk
17                               Email: gishimoto@zlk.com
*Counsel for Plaintiffs*
18

19

20

21

22

23

24

25

26

27

28

- 23 -